Final case on our call this morning is case, is agenda number nine, case number 104-679, People of the State of Illinois v. Jorge Rodriguez. Is it Ms. Filpi? Filpi? Okay, you may proceed. Good morning, Justices. My name is Emily Filpi and I represent Jorge Rodriguez in this matter. Today I will be arguing that the firearm enhancement statute should not apply through accountability. The language of the first tier of the firearm enhancement statute is clear and unambiguous. If the person committed the offense while armed with a firearm, 15 years shall be added to the term of imprisonment imposed by the court. The precise question for this court then is whether someone can be armed with a firearm through accountability for the use of the statute. This question has already been answered for us by the legislature. The firearm enhancements were passed as part of a comprehensive sentencing scheme, punishing offenders for the possession and use of a firearm. But what's repeatedly been ignored by both the appellate court and by the state is that this statute was passed alongside two definitions in the same public act. The definition of armed with a firearm and the definition of The definition of armed with a firearm provides that a person is considered armed with a firearm when he or she carries on or about his or her person or is otherwise armed with a firearm. This definition clearly shows that you can only be armed with a firearm if you are personally carrying a weapon. It's just not logical to assume that the legislature intended for a person to be Also, the otherwise armed with a firearm section of this definition does not mean accountability either because this court has already held so. In Condon, this court specifically held the phrase otherwise armed with a firearm refers to constructive possession or immediate access and timely control, not accountability. The appellate court and the state have both repeatedly ignored these definitions, but these definitions are what make this statute and the situation unique. These definitions were passed alongside the statute and were intended to aid in the understanding of the statute. Therefore, we cannot reasonably continue to just ignore this definition and reflexively apply the statute through accountability. Ms. Filpi, um, your argument has a certain appeal. I, it seems like it may not have been the intention of the legislature to allow accountability for the least culpable behavior, that being carrying the firearm, but prohibited for the most culpable discharging and causing injury and death. Now, that being said, that that is a guess on my part, and this court looks to statutory construction and how do I know you're looking at definitions, but how does this court get around the fact that D two and three uses the words personally and D one does not? They had the opportunity to put personally in D one as well. Correct, Your Honor. Well, as your recent opinion in Pierce notes, the lack of a word or a phrase in a statute is not always pregnant with meaning. Or, like Freud said, sometimes a cigar is just a cigar. The state's trying to make a lot over the inclusion of the word personally in the second two tiers and the lack of it in the first. But there's not there's no reason to include personally in the 15 year tier as its inclusion would have been redundant in light of these definitions. If we put the word personally into the first tier of the firearm statute, it would well into the body of the statute, it would read if the person committed the offense while personally armed with a firearm. In If a person committed the offense while personally armed with a firearm, that's if we put personally into the first tier. If we sub in the definition, it would read if the person committed the offense while personally carrying on or about his or her person, a firearm. The legislature's decision, I understand that you've said that, but the state's going to argue that the fact that personally isn't there makes it subject to accountability. And as I said, there is an appeal to it, but we see this all the time where the legislature said it one way, and if they choose to change it after we articulate that's what you said, it's for them to do across the street. Why wouldn't that apply here? I guess your argument is that you're saying that it doesn't make any sense and it's redundant, but we still have to get around the fact that you would think the contrary reading of D1 is there too, that they didn't use the word personally because they wanted to allow accountability and there was no other way to say it. Well, Your Honor, if they had wanted to allow accountability or if they intended for the placement of the personally language in the definition as opposed to the statute itself to refer to accountability, they could have made that expressly clear. The legislature knows how to make itself expressly clear. It knows how to include accountability like they did in the death penalty statute where they expressly included accountability. That's their job. If they find, you know, if perchance you determine that this statute should not be applied through accountability and the legislature, after your opinion, realizes that maybe that is what they really did want to do but they didn't include it in these and change it if that was their intent. However, we don't know and there's nothing in the language of the statute to even suggest that that was their intent. And even in their debates, there's nothing about accountability mentioned at all. And if they had wanted the lack of the word personally to have so much meaning and to mean accountability, it's likely that that would be in the debate somewhat. Theoretically, if the statute can't be read in two different ways, as the appellate court I think found it, and as the defendant argues, shouldn't benefit be given for a lenient interpretation to the defendant? Yes, the rule of lenity. If you find that the language is unclear, since it doesn't specifically say that it should include accountability, this court definitely should apply the rule of lenity and find it in favor of the defendant. Moreover, the state's interpretation leads to an absurd result, the creation of this messy hybrid statute where one tier applies through accountability and the other two do not. And again, as I said before, while the legislature certainly could have chosen to create a hybrid statute, that's not what they did here and they didn't expressly make that clear like they did in the death penalty statute. And it's not the role of the judiciary to reconstruct the intention of the legislature. Here we need to follow what the words of the statute say. And in this case, the personally language is in the definitions as opposed to the body of the statute itself. And it's perfectly reasonable for the legislature to have done this. Counsel, if I understand your argument, what you're saying is that in subsections 1, 2, and 3 of the firearms statute, the key consistent language is armed with a firearm, that you get from the statutory definition of what personally discharge means. Yes, Your Honor. Is that your argument? Well, it's a very specific comprehensive sentencing scheme. And it, you know, it punishes in a very logical manner the increasing culpability of the offender with increasing punishments. And it seems clear that just because the personally language is in the definition doesn't detract from the fact that this sentencing scheme punishes the person, the principal, the person who is personally carrying the firearm on or about his or her person. But the definition of personally discharge means while armed with a firearm. Which would have been the first, you know, qualifier, whatever, the first tier that they were armed with a firearm. And now since they've discharged the firearm, they're looking at punishment under the second or higher tier. If the legislature had intended to have this statute apply through accountability, there are also simpler, easier ways that the legislature could have written this statute. It would have, it probably would have been more harm based. As it stands, they didn't do that. They took pains to clearly write if the person committed the offense while armed with a firearm. They could have written it if a firearm was used during offense. Or if the defendant possessed a firearm during the commission of the offense. But as it stands, they didn't do that. They took pains to clearly write if the person committed the offense while armed with a firearm. And then went the extra mile to provide a definition for armed with a firearm to make it completely clear. So what are the words in D2 and D3 mean? What does the word personally mean in personally discharged a firearm in D2 and D3? What does the word personally mean? It seems like under your argument, there's no need for the word personally in D2 or D3. It's always a person discharging a firearm. Just like it's always a person carrying a firearm under the definition. So do the words personally in D2 and D3 have any redundancy? I think they do have some significance. I think that, I'm going to start with the first tier and then I'll try to explain to your question. In personally carries honor about his or her person. Personally is showing that it's the principal. I think carries is the action and then his or her person is who's doing the action. And I think that that logic likewise applies to the discharging the firearms, the action. And I think personally is still showing that it's the principal and not accountability. And I think in this... So you're saying the person, it seems like under your argument, you can strike personally in both of those, D2 and D3, and have the same thing. The person discharged a firearm or the person discharged a firearm in D2 and D3. Strike personally, what's the difference? Under your analysis in D1, it's the person who was armed with a firearm based on the definition of armed with a firearm. It's the person who's discharging a firearm and it's the person who discharged a firearm that caused great bodily harm, et cetera, in D3. So is it I think we also have to look towards the definitions again. And the legislature also provided the definition of the phrase personally discharged a firearm. And I think for them, I mean, it seems like the definitions are almost redundant, but they apply to different sections. You know, armed with a firearm, honor about his or her person, there's personally language in there. But in the phrase personally discharged a firearm, that's also the personally word happens to be both in the definition and the statute. You certainly would argue that D2 and D3 would not be subject to accountability because the word personally was used? No, absolutely would not be arguing that. And the state doesn't make that argument either. No, you would be arguing that you could not use an accountability theory on the 20 or 25 year enhancement. Correct, absolutely not. And you would have to go no further than the words personally being used in D2 and D3. Correct. So the point here is I'm trying to argue that the personally language here just happens to be in the definition and that the location doesn't necessarily mean accountability. In fact, it doesn't mean accountability. It's just where the legislature chose to put this personally language. Does that answer your question? I think what you're saying is that the definition has personally incorporated into it and the definition of discharge is personally in the title to it or whatever. I think I see that. Right. Right. Essentially, I mean, the word personally is included throughout the statute for a reason. Whether it's in the definition or it's in the body of the statute itself, that's how the legislature did it. And there's nothing so irrational about that that this court should go beyond the plain language of the statute and read into something that isn't there. For these reasons, we ask that you apply the statute as written and vacate Mr. Rodriguez's 15 year add-on, which was applied through accountability. Thank you. Thank you. Thank you, Ms. Filby. Ms. Magani-Wakely, is that correct? Good morning. I am Assistant State's Attorney Harina Magani-Wakely, representing the people of the state of Illinois. The defendant was the mastermind in this murder. He was the one who knew the murder victim, Mario Avila, personally and chose the victim as the target. He was the one who set up the meeting with the victim and who lured the victim into the alley to be robbed and killed. He made the plans with the co-defendant to not only rob and kill the victim, but knew that the co-defendant was planning on using a gun. And in the alley, this defendant was the one who personally introduced the co-defendant to the victim and then stood as a lookout as the co-defendant shot the victim in the ear, the murder weapon, as well as the body. Based on this, the defendant was found guilty of first-degree murder under accountability principles and sentenced to 35 years. He was also given an additional 15 years under the enhancement statute. The issue before this court is whether the 15 years enhancement provision applies to accountable defendants. And the answer is yes. When one looks at... Is the purpose of the statute to deter people from carrying firearms? And if that is true, then what's the incentive for the criminal who does not harm himself but becomes accountable for those who do? He might as well carry one, too, since he's subject to the penalty whether he carries a gun or not. Aren't we losing the deterrent effect that I think the legislature is seeking? The deterrent factor is to try to have either a single individual or a group criminal enterprise be deterred from contemplating, using, thinking about, or actually having a gun during the commission of the offense. And that is satisfied by holding all persons who agree to get together in a criminal enterprise and use and possess a gun to hold them accountable under the 15-year provision as this defendant was sentenced under. So if one person in a group of five carrying the weapon, do you think they would all be held responsible for carrying a heavy weapon and for the add-on? Absolutely. Ms. McGonigal-Wakeley, you heard me ask Ms. Filpi. Again, her argument does have a certain appeal. I understand your statutory construction argument, but would the legislature have ever intended to attach accountability to the least culpable of the three and not to the two more culpable actions? Why can you think of it that they did that? I know it doesn't have to be part of your argument because your argument is personally in the last two and not in the first, so accountability applies and the 15-year attaches. But why would they do that? Well, because based on the intent and when looking at the three tiers of the provisions, which is the 15, 20, 25, and as you go down the tiers, the actions that are being sought to be deterred, not only having the gun, but then the legislature decided, rightfully so, that if you discharge that gun, you get 20. And that person who discharges the gun, based under the definition of that provision, is the one who personally has that gun. And then the legislature took that even further, realizing, again, the fatalistic nature of the instrument that they were trying to deter criminals from using and saying, if you use that gun, you personally have it, you use that gun, and you cause severe bodily injury. But my specific question is, why would the accountability only attach to being armed with a gun and not with the discharge of the gun? Because of the legislature's use of the word personally in the two definitions. And I understand that as well. I just want to know why they would do that. Why they would, in your opinion, why would accountability only go to the least culpable of the three acts? Is it because they just don't think accountability should apply to the last two? No, because they were fully aware of accountability principles, and like other statutory construction, like in this court held in Sangster and Jordan, when in looking at triggering offenses for additional sentences, the consecutive or the extended in those holdings, I mean, the court did clearly say, it's presumed that in enacting any statute, that the legislature was fully aware of accountability principles and the interpreting case law, and found that unless the legislature clearly says that accountable defendants are not included, or are excluded, excuse me, are excluded from the provision, then it is presumed that the legislature wanted accountable defendants. Here, the legislature, with the three tier, made it clear that they expected or wanted the accountable defendant to be included in the first provision, and then used the word personally in the second and the third to exclude accountable defendants. And when that personally is used in conjunction with the statutory definition of what is considered personally discharge a firearm, which is what, two and three, it is the legislature made it very clear that they were intending to limit those two provisions to persons who actually had actual possession of the weapon, as well as the ones who discharged and fired the weapon. Yes? With the criminal code, do you have any assistance here in defining, it says, a person is considered armed with a firearm when he or she carries it on or about his or her person, or is otherwise armed with a firearm? That to me seems to indicate that the person must carry the weapon himself. Well, under the rules of statutory construction, all the words within that definition should be given meaning. And when one looks at that definition, there's two parts to it. The first part, which is when he or she carries on or about his person, is a reference to the person having the actual physical possession of the firearm. And then the other phrase, the second part to that definition, is the one or is otherwise armed with a firearm. That necessarily means the person doesn't have actual possession, and how would you be deemed to have possession without having actual? And there's two ways. It's either through constructive possession or accountability. And it is. Accountability is based on the elements of the offense. Being armed with a firearm is not an element of first-degree murder, is it? It was an element, as the jury was instructed in this case, where they needed to find beyond a reasonable doubt that defendant or one whose actions he was legally responsible for was armed with a firearm when he committed the three, either A, B, or C, within the first-degree murder statute definition. And so, I mean, under the language, the plain language here in this instance with respect to the enhancement is very clear that the legislature wanted the accountable defendant to be included in the 15-year provision when one considers not only the presumption that, of course, legislatures knew accountability principles and drafting, but also when one considers the legislature's deliberate utilization of the word personally in the second and third sections of that provision. Canons of statutory construction dictate that all words should be given meaning and that no word should be just deemed meaningless or superfluous. Was the shooter or the trigger man in this case charged with personally discharging a firearm and sentenced to an additional 20 years? Do you know? I actually don't know. But in connection with your explanation, I think it was with Justice Fitzgerald a moment ago, you indicated that the legislature could have intended the 15-year add-on to apply only in the situation where the person accountable was charged, which included while armed with a firearm, but wanted a more serious add-on for the person who actually did the firing. And that could happen in the case where the trigger man is charged with the offense, which included the element of personally discharging, and the person accountable would be charged with the additional element of armed with a firearm. Is that your understanding of the law? Yes. The case cited by Defendant People v. Condon does not mandate any contrary conclusion other than the fact that accountable defendants are included under the 15-year enhancement. Condon dealt with the interpretation of what is considered while armed with a firearm under constructive possession principles, and the court said for constructive possession principles to be considered armed with a firearm, one needed immediate access to the firearm. What the Condon court did not say is that accountability principles could not be deemed sufficient to qualify as while armed with a firearm. Based on the reasons stated here, as well as those outlined in the people's brief, the people would ask that the appellate court's judgment below be affirmed. On page 24 of your brief, you indicate that similar language is used in the armed violence statute. Has that, and there's an appellate court case that you cite where the person can be charged accountable for committing armed violence while armed with a dangerous weapon. Is that the only citation that you have, or is there any Supreme Court case upholding that? The case is People v. Freeman out of the 1st District in 1981. That was the only case that I found when I was writing the opening brief for us, and I did shepherdize, and if there is a case out there, I did not find it. Thank you, Ms. McGonigal-Wheatley. Rebuttal, Ms. Filpi? First of all, this date brings up Sankster, and I believe that this statute at issue is very different from the one in Sankster. Here we have definitions. Definitions which were passed alongside the statute in the same public act, Public Act 9144. The legislature clearly intended that this add-on apply solely to the person carrying the firearm on or about his or her person. Also, the consecutive sentencing scheme, which was at issue in Sankster, is a freestanding statute. It's not part of a comprehensive sentencing scheme like we have right here. Language in the firearm enhancements is also very specific and precise. Also, the application of accountability to the consecutive sentences statute in Sankster doesn't result in this hybrid sort of situation. It was all or nothing. Here, if you construe the first tier to apply through accountability, it becomes this messy, convoluted statute where the first tier becomes sort of a catch-all provision, hammering everyone that was involved in offense where a firearm was present. And that's not what the language of the statute says. Secondly, the question in Condon was whether a defendant was otherwise armed under the armed violence law, where guns were found throughout his house and he wasn't personally carrying anything. And the common law definition of otherwise armed, which is used in the armed violence statute and the statute here, was held not to refer to accountability. It was held specifically to refer to constructive possession. The state's reading of the statute also changes the nature of the statute, kind of from this clear three-tier progression with the increased culpability to this hybrid situation. Again, where the personally language sort of precludes, you know, it's just the person carrying the gun, and then the 15-year kind of catches everyone else up. However, it's very rational that the legislature may have decided to want to hire a mandatory minimum for those actually carrying the weapon as opposed to those who were just found guilty through accountability. It would allow greater flexibility in sentencing accountable defendants within the underlying offense itself. As for the co-defendant, the actual shooter in this case, I'm not exactly positive what he received, but I'm fairly certain that he did not receive the 15. He received one of the higher-tier add-ons to his sentence for first-degree murder in this case. For that reason, I ask that you vacate my client's 15-year accountability add-on. Thank you, Ms. Filpian. Thank you, Ms. McGonigal-Wakely. Case number 104-679, People of the State of Illinois v. Jorge Rodriguez, is taken under advisement as agenda number nine.